UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI  DIVISION

United States District Court
Southern District of Texas
FILED

OCT 1 4 2009

˒ Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NUMBER C-09-236-SS |
| | § | |
| ELEAZAR (ELI) CASTILLO GARCIA | § | |
| MARGUERITE JEANETTE GARCIA | § | |
|   AKA JEANETTE CROUT | § | |
|   AKA JEANETTE CROUT-GARCIA | § | |
| JOHN D. MARTINEZ | § | |
| FRANK D. MARTINEZ | § | |

**SECOND SUPERSEDING INDICTMENT**

THE GRAND JURY CHARGES THAT:

At all times material to the indictment:

### A. MEDICARE AND MEDICAID

1.      Medicare is a health care benefit program that provides federal funds to pay
claims, also referred to as bills, submitted by enrolled suppliers who provide specified medical
benefits, items, and services to individuals who are qualified Medicare beneficiaries.  The Texas
Medicaid program (hereinafter "Medicaid") is a cooperative federal health care benefit program
that provides federal and state funds to pay claims, also referred to as bills, submitted by enrolled
providers who provide specified medical benefits, items, and services to persons who are
qualified Medicaid beneficiaries.

2.      Medicare is the first payor and Medicaid is the secondary payor of claims and bills

submitted for medical benefits, items, and services to individuals who are eligible to receive both Medicare and Medicaid benefits.  Claims submitted in those situations are sometimes called crossover claims.

3.      Only individuals and entities who are enrolled as suppliers in Medicare are permitted to submit claims to Medicare for medical benefits, items, and services furnished to eligible Medicare beneficiaries.  Enrollment requires that a supplier submit an application to Medicare, and to sign a provider agreement with Medicare upon approval of that application.

4.      Only individuals and entities who are enrolled as providers in Medicaid are permitted to submit claims to Medicaid for medical benefits, items, and services furnished to eligible Medicaid beneficiaries.  Enrollment requires that a supplier submit an application to Medicaid, and to sign a provider agreement with Medicaid upon approval of that application.

5.      There is no specific difference between the terms "supplier" and "provider", except that supplier is the term used by Medicare to describe the persons and entities which furnish medical benefits, goods, items, or services to Medicare beneficiaries under an agreement with Medicare; and, provider is the term used by Medicaid to describe the persons and entities which furnish medical benefits, goods, items, or services to Medicaid beneficiaries under an agreement with Medicaid.  The terms may be used interchangeably hereinafter.

6.      Medicare and Medicaid publish and make available to all suppliers and providers various manuals, bulletins, revisions, changes and supplements which contain the program rules, regulations, conditions and limitations, and instructions for providing allowable medical benefits, items, and services and also the program rules, regulations, conditions and limitations, and instructions for submitting claims for reimbursement for those allowed medical benefits, items,

2

and services which have been supplied and provided.

7.      Every person and entity desiring to participate in Medicare as a supplier and every person and entity desiring to participate in Medicaid as a provider, agrees to, and is obligated to know, follow, and abide by, each program's rules, regulations, conditions and limitations, including all revisions, changes and supplements, as well as all applicable federal and state licensure and regulatory requirements.

8.      All claims from suppliers to Medicare and from providers to Medicaid are submitted through companies who contract with Medicare or with Medicaid to provide administrative services including claims processing and payment.  Claims can be submitted on paper or by electronic means.  Although suppliers and providers may sometimes submit claims in groups for efficiency, every claim is considered individually.

## B.  UNITEDHEALTH GROUP

9.      UnitedHealth Group (hereinafter "United" ) is a family of companies which provide private plans and contracts, affecting commerce, under which payment is made for medical benefits, items, and services provided to individuals, known as "members", who are participants in United's health benefit plans.

10.     United's health benefit plans describe and specify the medical benefits, items, and services that are "covered services" for which United will pay on behalf of it members.  The specific health benefit plan through which a United member is covered determines whether services are covered by the plan and reimbursable through United.  In a typical contract with its members, benefits are paid for services and supplies using a system of copayments, coinsurance

and deductibles. The United plans determine the extent to which the United member is responsible for a portion of the medical bills through a copayment, coinsurance or deductible amount. Under certain Certificates of Coverage, members are required to meet their deductible and coinsurance obligations before United is obligated to pay benefits to the provider.

11. United, through contracts with physicians and other providers of health care services, maintains one or more networks of providers that are available to United's members. The specific amount paid to a health care provider who submits a claim to United for covered services provided to a United member is determined, in part, by whether or not the provider has agreed to accept a discounted rate for the service, either through a direct contract with United or through a contract with another entity that is authorized to offer the discounted rate to United. Such agreements are often referred to as "preferred provider" or "network" agreements. Preferred provider/network agreements allow a health plan administrator or insurer to offer lower payment options to members who choose to use a provider that is part of the network. Members who choose a preferred provider are assured that, for covered services, their responsibility for payment is limited to any applicable copayment, coinsurance and deductible amounts provided in their plan. Preferred providers accept a discounted payment rate in exchange for participation in the network. Providers who have not entered into a written contract with United to participate in United's network of providers are considered to be non-preferred providers or out of network providers.

12. United offers participants in its benefits plans the choice of going to participating/network providers or non-participating/out of network providers. Participating providers are paid directly for services rendered to individuals who are participants in United's

4

health benefit plans. United members who go to network providers have no claim forms to fill out, but may be subject to copayments, coinsurance and/or deductibles, depending upon the terms of their health benefit plan.

13.     United members who choose to go to out of network providers are responsible for paying the out of network provider out of his or her own pocket unless the provider accepts assignment of the claim. United members who choose to go to out of network providers are also required to share in the higher cost of services and supplies provided by out of network providers via the coinsurance and deductible requirements. This means the member remains responsible for the charges that are billed by the non-participating provider that are higher than the usual and customary charge that United pays to a contracted network provider.

14.     United's members are encouraged to use contracted network providers because the cost of health benefits is more predictable. Non-contracted providers are not constrained by an agreed fee schedule but rather bill their usual and customary charges that are often higher than the fee schedule.

15.     Providers desiring to participate in one or more of the United networks are required to enter into a written agreement with United. Said written agreement contains terms and conditions which impose upon the provider various obligations and duties, including, but not limited to, the requirement that the provider follow the programs, protocols, and administrative procedures adopted by United. Providers desiring to participate in one or more of the United networks also agree to follow and be bound by the United Payment Policies.

### C. TEXAS LAWS REGARDING
### LICENSURE OF ORTHOTISTS AND
### ACCREDITATION OF ORTHOTIC FACILITIES

16.     All persons providing orthotic and/or prosthetic goods or services in the State of

Texas must be licensed by the Texas Board of Orthotics and Prosthetics.  All facilities which

provide orthotic and/or prosthetic goods or services must be accredited by the Texas Board of

Orthotics and Prosthetics.

17.     "Orthotics" means the science and practice of measuring, designing, fabricating,

assembling, fitting, adjusting, or servicing an orthosis under an order from a licensed physician,

chiropractor, or podiatrist for the correction or alleviation of a neuromuscular or musculoskeletal

dysfunction, disease, injury, or deformity.  "Orthosis" means a custom-fabricated or custom-

fitted medical device designed to provide for the support, alignment, prevention, or correction of

a neuromuscular or musculoskeletal disease, injury, or deformity.  Diabetic shoes, inserts, and

various types of body braces are examples of orthosis.

18.     "Prosthetics" means the science and practice of measuring, designing, fabricating,

assembling, fitting, adjusting, or servicing a prosthesis under an order from a licensed physician,

chiropractor, or podiatrist.  "Prosthesis" means a custom-fabricated or custom-fitted medical

device, that is not surgically implanted, used to replace a missing limb, appendage, or other

external human body part.  The term includes an artificial limb, hand, or foot.

19.     Durable medical equipment, or "DME," is a term used to describe certain medical

equipment used in the home, and includes such things as iron lungs, oxygen tents, hospital beds,

infusion pumps, blood-testing strips and blood glucose monitors for individuals with diabetes

and wheelchairs.  The acronym "DMEPOS" means durable medical equipment, prosthetics,

6

orthotics, and supplies.

20.     Orthotic or prosthetic facility means a location, including a building or office, where the profession and practice of orthotics or prosthetics normally takes place.

21.     Since November 8, 1998, the laws of the State of Texas require that, unless otherwise exempt, orthotic and/or prosthetic facilities must be accredited by the Texas Board of Orthotics and Prosthetics in order for the facility, or any person providing health care services at the facility, to perform or offer to perform orthotics and/or prosthetics.

22.     Since November 8, 1998, the laws of the State of Texas require that for an orthotic facility to be accredited by the Texas Board of Orthotics and Prosthetics the facility must be under the clinical on-site direction of an orthotist licensed by the Texas Board of Orthotics and Prosthetics.  Said person, sometimes referred to as the "on-site practitioner", the "on-site practitioner in charge", the "practitioner in charge", the orthotist in charge, or simply the "PIC", is the orthotist who is designated on the application for accreditation as the person who has the authority and responsibility for the facility's compliance with the Texas Orthotics and Prosthetics Act concerning the practice of orthotics in the facility.

23.     Since November 8, 1998, the laws of the State of Texas also require that for a prosthetic facility to be accredited by the Texas Board of Orthotics and Prosthetics the facility must be under the clinical on-site direction of a prosthetist licensed by the Texas Board of Orthotics and Prosthetics.  Said person, sometimes referred to as the "on-site practitioner", the "on-site practitioner in charge", the "practitioner in charge", the prosthetist in charge, or simply the "PIC", is the prosthetist who is designated on the application for accreditation as the person who has the authority and responsibility for the facility's compliance with the Texas Orthotics

and Prosthetics Act concerning the practice of prosthetics in the facility.

24.     Since November 8, 1998, the laws of the State of Texas have prohibited persons licensed by the Texas Board of Orthotics and Prosthetics as an orthotist and/or prosthetist from practicing in facilities which have not been accredited by the Texas Board of Orthotics and Prosthetics, unless such facility is one of the few which are specifically exempt from accreditation.

25.     Since September 1, 1999, the laws of the State of Texas have not allowed any person to practice, attempt to practice, or offer to practice orthotics, act as an assistant to a person who practices orthotics, or in any way hold himself or herself out as being able to practice orthotics, unless the person has a current license to practice orthotics issued by the Texas Board of Orthotics and Prosthetics.

26.     Since September 1, 1999, the laws of the State of Texas have not allowed any person to practice, attempt to practice, or offer to practice prosthetics, act as an assistant to a person who practices prosthetics, or in any way hold himself or herself out as being able to practice prosthetics, unless the person has a current license to practice prosthetics issued by the Texas Board of Orthotics and Prosthetics.

### D.  MEDICARE AND MEDICAID RULES AND REGULATIONS REGARDING DURABLE MEDICAL EQUIPMENT AND OTHER ORTHOTIC AND PROSTHETIC GOODS AND SERVICES

27.     The United States Code of Federal Regulations at 42 CFR Section 424.57 et seq contain special Medicare rules for payment of DMEPOS and special Medicare rules for issuance of DMEPOS supplier billing privileges and accreditation.

8

28.     Orthotic and prosthetic goods and services are benefits of the Medicare program and may be billed to Medicare only when they are furnished:

    a.     in compliance with the Medicare rules and regulations;

    b.     by a supplier who has a Medicare supplier number and is otherwise duly authorized and enrolled as a Medicare supplier;

    c.     by a supplier whose business is operated in compliance with federal and state licensure and regulatory requirements;

    d.     by an individual who holds a current license from the Texas Board of Orthotics and Prosthetics and/or is otherwise in compliance with federal and state licensure and regulatory requirements; and,

    e.     at an accredited facility or at a location that is exempt from accreditation.

29.     Medicare will generally pay approximately 80% of the allowed charge for orthotic and/or prosthetic goods and supplies furnished to Medicare beneficiaries by Medicare enrolled suppliers. The Medicare beneficiary is responsible for the remainder of the allowed charge. However, if the Medicare beneficiary is also a beneficiary of Medicaid, the remaining balance is forwarded to Medicaid for payment as a cross-over claim.

30.     To be eligible to become a Medicaid provider of orthotic and/or prosthetic goods and services the applicant must be enrolled as a Medicare orthotics and/or prosthetics supplier. To thereafter bill Medicaid for orthotic goods and services, the Medicaid provider must have a Medicare supplier number and otherwise be duly authorized and enrolled as a Medicare supplier.

31.     Certain orthotic and prosthetic goods and services in cross-over claims are benefits of the Medicaid program and may be billed to Medicaid only when they are furnished:

9

a. by a supplier who has a Medicare supplier number and is otherwise duly authorized and enrolled as a Medicare supplier;

b. by a provider who is duly authorized and enrolled as a Medicaid provider;

c. to a Medicaid beneficiary who is also a Medicare beneficiary;

d. in compliance with the Medicare and Medicaid rules and regulations;

e. by a supplier whose business is operated in compliance with federal and state licensure and regulatory requirements;

f. by an individual who holds a current license from the Texas Board of Orthotics and Prosthetics and/or is otherwise in compliance with federal and state licensure and regulatory requirements; and,

g. at an accredited facility or at a location that is exempt from accreditation.

32. On crossover claims, payment by Medicare is a prerequisite for payment by Medicaid. On crossover claims the medical benefits, items, or services must have been supplied in accordance with all Medicare rules and regulations. If Medicare pays a claim, Medicaid relies upon that payment and trusts that the claim is valid, appropriate, and that the benefits, items, or services were supplied in accordance with the Medicare rules and regulations requirements including those set forth in paragraphs 28 and 31 above.

33. Orthotic and prosthetic goods and services are also covered benefits of Medicaid when provided to Medicaid beneficiaries under 21 years of age, and subject to the same requirements set forth in paragraph 31 above.

34. Medicare and Medicaid require providers and suppliers to use the Healthcare Common Procedure Coding System (HCPCS) procedure and modifier codes to describe the

10

orthotic and prosthetic goods and services which are billed to them by enrolled providers and suppliers.

## E. THE DEFENDANTS

35.     Defendant, ELEAZAR (ELI) CASTILLO GARCIA, was an individual residing in Corpus Christi, Texas.  He was employed by Orthopedic Specialists D.M.E. Inc. located at 2222 Morgan Avenue, Suites 106 and 115, Corpus Christi, Texas where he, on behalf of said employer, practiced, attempted to practice, or offered to practice orthotics and/or prosthetics. Defendant, ELEAZAR (ELI) CASTILLO GARCIA, has never been licensed as an orthotist or prosthetist by the Texas Board of Orthotics and Prosthetics.  Defendant, ELEAZAR (ELI) CASTILLO GARCIA, applied to the Texas Board of Orthotics and Prosthetics for a license as an orthotist but has taken and failed the licensing examination five (5) times.  Defendant, ELEAZAR (ELI) CASTILLO GARCIA, has never been personally enrolled as a supplier in the Medicare program or as a provider in the Medicaid program.

36.     Defendant, MARGUERITE JEANETTE GARCIA , was an individual residing in Corpus Christi, Texas.  She was also sometimes known as Jeanette Crout, or Jeanette Crout-Garcia, but will be referred to herein as defendant, MARGUERITE JEANETTE GARCIA .  She has never been licensed as an orthotist or prosthetist by the Texas Board of Orthotics and Prosthetics.  Defendant, MARGUERITE JEANETTE GARCIA , was the owner of Orthopedic Specialists D.M.E., Inc. which was located at 2222 Morgan Avenue, Suites 106 and 115, Corpus Christi, Texas.

37.     Orthopedic Specialists D.M.E., Inc. was enrolled in Medicare and Medicaid as a supplier/provider of orthotic and prosthetic goods and services.  Orthopedic Specialists D.M.E.,

Inc. was an orthotic and prosthetic facility under Texas laws and was not exempt from the

mandatory facility accreditation laws of the State of Texas that took effect on November 8, 1998

as described in paragraphs 21, 22, and 23 above.

38.     During the period of time from on or about February 22, 2002 through on or about

December 8, 2008, Orthopedic Specialists D.M.E., Inc. was a network provider within United's

network of providers.

39.     Defendant, ELEAZAR (ELI) CASTILLO GARCIA, and defendant, JEANETTE

MARGUERITE GARCIA, have been married since July 31, 1999.

40.     Defendant, JOHN D. MARTINEZ, was an individual residing in San Antonio,

Texas.  He was licensed as an orthotist by the Texas Board of Orthotics and Prosthetics.

41.     Defendant, FRANK D. MARTINEZ, was an individual residing in Fair Oaks,

Texas.  He was licensed as an orthotist by the Texas Board of Orthotics and Prosthetics.

42.     Defendant, JOHN D. MARTINEZ, and defendant, FRANK D. MARTINEZ, are

brothers.  They have been equal owners and operators of San Antonio Orthotics Corp. dba San

Antonio Orthotics & Artificial Limbs (unindicted herein) located at 7220 Louis Pasteur Dr., Suite

150 San Antonio, Texas, since on or about January 18, 1999.

43.     San Antonio Orthotics & Artificial Limbs, sometimes referred to as

SAOAL (unindicted herein) was enrolled in Medicare and Medicaid as a supplier/provider of

orthotic and prosthetic goods and services.

44.     During the period of time from on or about February 22, 2002 through on or about

December 1, 2008, San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs

was not a network provider within United's network of providers, and was thus considered to be

an "out of network" provider under United's health benefit plans.  During said time frame,

medical benefits, items, and services provided by San Antonio Orthotics Corp. dba San Antonio

Orthotics & Artificial Limbs to persons who were participants in United's health care benefit

plans may not have been "covered services" for which United would pay or would have been

subject to higher copayments, or coinsurance.

## F. MEDICARE AND MEDICAID ENROLLMENT AND ACCREDITATION OF ORTHOPEDIC SPECIALISTS D.M.E., INC.

45.     Orthopedic Specialist D.M.E., Inc. first became an orthotics supplier and provider

in Medicare and Medicaid in 1996.  From 1996 until on or about January 6, 2009, the exact dates

being unknown to the Grand Jury, defendant, ELEAZAR (ELI) CASTILLO GARCIA, practiced,

attempted to practice, and/or offered to practice orthotics and prosthetics, and/or otherwise

provided orthotic and prosthetic goods and services to patients at the Orthopedic Specialists

D.M.E., Inc. facility in Corpus Christi, Texas, and elsewhere in Corpus Christi, Texas.

Orthopedic Specialists D.M.E., Inc. submitted bills and claims to Medicare and Medicaid for the

goods and services provided by defendant ELEAZAR (ELI) CASTILLO GARCIA.

46.     Orthopedic Specialist D.M.E., Inc. was able to become a supplier and provider in

the Medicare and Medicaid programs in 1996, even though it was neither accredited by the Texas

Board of Orthotics and Prosthetics, nor under the clinical on-site direction of an orthotist licensed

by the Texas Board of Orthotics and Prosthetics because, at that time, the laws of the State of

Texas did not require Orthopedic Specialists D.M.E., Inc to be accredited, or to be under the

clinical on-site direction of an orthotist licensed by the Texas Board of Orthotics and Prosthetics.

47.     From 1996 until September 1, 1999, defendant, ELEAZAR (ELI) CASTILLO GARCIA, was legally able to provide, or attempt to provide, orthotic and prosthetic goods and services to patients at Orthopedic Specialist D.M.E., Inc. and Orthopedic Specialist D.M.E., Inc. was legally able to bill Medicare and Medicaid for those services because, at that time, the laws of the State of Texas did not require defendant, ELEAZAR (ELI) CASTILLO GARCIA, to have a license to practice, attempt to practice, or offer to practice orthotics.

48.     On or about January 20, 1999, defendant, ELEAZAR (ELI) CASTILLO GARCIA, applied to the Texas Board of Orthotics and Prosthetics for a licence to practice orthotics.

49.     On or about June 15, 1999, Orthopedic Specialist D.M.E., Inc. applied to the Texas Board of Orthotics and Prosthetics for accreditation as an orthotics facility.  The application listed defendant, ELEAZAR (ELI) CASTILLO GARCIA, and Fidencio Guerrero (unindicted herein) as the orthotists in charge of Orthopedic Specialist D.M.E., Inc.  Neither defendant, ELEAZAR (ELI) CASTILLO GARCIA, nor Fidencio Guerrero (unindicted herein) were licensed orthotists at that time.  The application for accreditation claimed that the licenses of defendant, ELEAZAR (ELI) CASTILLO GARCIA, and Fidencio Guerrero (unindicted herein) were "pending."

50.     The application of Fidencio Guerrero (unindicted herein) for a license to practice orthotics was denied on or about June 21, 1999.  On or about January 7, 2000, the Texas Board of Orthotics and Prosthetics issued a Cease and Desist Order to Fidencio Guerrero (unindicted herein) which directed him to immediately stop practicing orthotics.

51.     On or about October 30, 1999, the defendant, ELEAZAR (ELI) CASTILLO

14

GARCIA, failed his first attempt to pass the state examination to become a licensed orthotist.

52.     On or about January 4, 2000, the Texas Board of Orthotics and Prosthetics denied the application of Orthopedic Specialist D.M.E., Inc. for facility accreditation because it was not under the clinical on-site direction of any licensed orthotist.

53.     On or about March 27, 2000, for reasons unknown to the Grand Jury, the Texas Board of Orthotics and Prosthetics granted facility accreditation to Orthopedic Specialist D.M.E., Inc. as an orthotic facility until December 26, 2001.

54.     On or about April 15, 2000, defendant, ELEAZAR (ELI) CASTILLO GARCIA, failed his second attempt to pass the examination to become a licensed orthotist.

55.     On or about October 9, 2001, the exact date being unknown to the Grand Jury, the Texas Board of Orthotics and Prosthetics discovered that defendant, ELEAZAR (ELI) CASTILLO GARCIA, was practicing, attempting to practice, or offering to practice orthotics at Orthopedic Specialist D.M.E., Inc. without a license in violation of the laws of Texas.

56.     On or about October 10, 2001 the Texas Board of Orthotics and Prosthetics sent defendant, ELEAZAR (ELI) CASTILLO GARCIA, a CEASE AND DESIST ORDER entered on October 9, 2001.  That order stated that defendant, ELEAZAR (ELI) CASTILLO GARCIA, did not have a license from the Texas Board of Orthotics and Prosthetics to practice orthotics and that he must, therefore immediately cease and desist acting as, or impersonating, a licensed orthotist.  That letter was received by defendant MARGUERITE JEANETTE GARCIA  on or about October 15, 2001.  Said CEASE AND DESIST ORDER has never been rescinded and is currently still in effect.

57.     On or about October 10, 2001, the Texas Board of Orthotics and Prosthetics sent defendant, ELEAZAR (ELI) CASTILLO GARCIA, a letter notifying him that he could not serve as the on-site practitioner at Orthopedic Specialist D.M.E., Inc. because he was not licensed as an orthotist.  That letter also stated that a licensed orthotist would need to be the on-site practitioner for Orthopedic Specialist D.M.E., Inc. to remain accredited as an orthotic facility. Orthopedic Specialist D.M.E., Inc. was given until October 25, 2001 to designate a licensed orthotist to be the on-site practitioner in charge.  That letter was received by defendant, MARGUERITE JEANETTE GARCIA , on or about October 15, 2001.

58.     On or about October 16, 2001, defendant, ELEAZAR (ELI) CASTILLO GARCIA, registered to take the orthotics license examination again on October 27, 2001.  He also asked the Texas Board of Orthotics and Prosthetics for more time to get a licensed orthotist to be the on-site practitioner in charge at Orthopedic Specialist D.M.E., Inc.

59.     Defendant, ELEAZAR (ELI) CASTILLO GARCIA, took the licensing examination for the third time on or about October 27, 2001.  On or about November 14, 2001, the Texas Board of Orthotics and Prosthetics notified defendant, ELEAZAR (ELI) CASTILLO GARCIA, that he had failed his third attempt to pass the examination to become a licensed orthotist.

60.     On or about  November 14, 2001, the Texas Board of Orthotics and Prosthetics notified Orthopedic Specialist D.M.E., Inc. of the board's intent to revoke the accreditation of Orthopedic Specialist D.M.E., Inc. for failing to have a currently licensed practitioner in charge.

61.     On or about December 20, 2001, the Texas Board of Orthotics and Prosthetics sent defendant, ELEAZAR (ELI) CASTILLO GARCIA, and defendant, MARGUERITE

JEANETTE GARCIA , a letter notifying them that they had 10 days to notify the Board how

Orthopedic Specialists D.M.E., Inc. intended to comply with the Board rules and the Texas

Orthotics and Prosthetics Act.  The letter also advised defendant, ELEAZAR (ELI) CASTILLO

GARCIA, and defendant, MARGUERITE JEANETTE GARCIA , to: "Please note that you are

not licensed as an orthotist and may not practice orthotics, even in a hospital."

62.     On or about December 31, 2001, defendant, ELEAZAR (ELI) CASTILLO

GARCIA, and defendant, MARGUERITE JEANETTE GARCIA , allowed the facility

accreditation of Orthopedic Specialists D.M.E., Inc. to expire without a renewal application

having been filed.

63.     On or about January 14, 2002, the Texas Board of Orthotics and Prosthetics sent a

notice letter to defendant, ELEAZAR (ELI) CASTILLO GARCIA, that the facility accreditation

of Orthopedic Specialists D.M.E., Inc. expired on December 31, 2001.  That letter advised

defendant, ELEAZAR (ELI) CASTILLO GARCIA, that: "If you wish to renew the facility

accreditation, a licensed orthotist must be designated as the on-site practitioner in charge, the fee

must be paid and the renewal application must be submitted to the board."  The letter also

advised defendant, ELEAZAR (ELI) CASTILLO GARCIA, that: "You may not practice

orthotics in any setting, even in a hospital or an accredited or unaccredited facility.  If you are

currently practicing orthotics, you must cease doing so immediately."

64.     On or about January 14, 2002, Medicare revoked the Medicare supplier number

of Orthopedic Specialists D.M.E., Inc., because of its failure to maintain its facility accreditation,

and its failure to have a licensed orthotist on site.  The revocation was effective as of December

31, 2001.  Notice of the revocation of its Medicare supplier number was sent to Orthopedic

Specialists D.M.E., Inc in a letter from Medicare dated January 14, 2002. The letter also notified Orthopedic Specialists D.M.E., Inc. that it had a right to seek reinstatement of its Medicare supplier number by submitting a corrective action plan and providing evidence that it was in compliance with the Medicare requirements.

65.     The revocation of the Medicare supplier number of Orthopedic Specialists D.M.E., Inc. prevented and suspended claims to Medicare by Orthopedic Specialists D.M.E., Inc. and crossover claims to Medicaid for orthotic goods and services provided at Orthopedic Specialists D.M.E., Inc.

66.     On or about February 22, 2002, defendant, JEANETTE MARGUERITE GARCIA, signed a Texas Board of Orthotics and Prosthetics "Facility Renewal Form" on behalf of Orthopedic Specialists D.M.E., Inc. in an attempt to obtain accreditation of Orthopedic Specialists D.M.E., Inc. as an orthotic facility and also to accredit it as a prosthetics facility. That form was delivered to the Texas Board of Orthotics and Prosthetics on or about March 1, 2002. In that Facility Renewal Form, defendant, MARGUERITE JEANETTE GARCIA , represented that defendant, JOHN D. MARTINEZ, and defendant, FRANK D. MARTINEZ, would be the "on-site" practitioners in charge of orthotics at Orthopedic Specialists D.M.E., Inc. and that Mitch E. Presley, Jr. (unindicted herein) would be the "on-site" practitioner in charge of prosthetics at Orthopedic Specialists D.M.E., Inc.

67.     On February 22, 2002, Mitch E. Presley, Jr. (unindicted herein) was employed as a licensed orthotist and prosthetist by defendant, JOHN D. MARTINEZ, and defendant, FRANK D. MARTINEZ, at their company, San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs located in San Antonio, Texas.

18

68.     On or about February 22, 2002, defendant, JOHN D. MARTINEZ, defendant,
FRANK D. MARTINEZ, and Mitch E. Presley, Jr. (unindicted herein) signed a letter addressed
to the Texas Board of Orthotics and Prosthetics which represented that effective February 22,
2002,  they were the "Practitioners in Charge at Orthopedic Specialists D.M.E., Inc." Said letter
was on the letterhead of Orthopedic Specialists D.M.E., Inc., and was sent via facsimile to the
Texas Board of Orthotics and Prosthetics on February 22, 2002.

69.     On or about February 22, 2002, defendant ELEAZAR (ELI) CASTILLO
GARCIA, on behalf of Orthopedic Specialists D.M.E., Inc. sent a letter to Medicare appealing
for reinstatement of the Medicare supplier number of Orthopedic Specialists D.M.E., Inc.  In
support of the appeal, and as evidence of a corrective action plan required by Medicare and the
Texas Board of Orthotics and Prosthetics, defendant, ELEAZAR (ELI) CASTILLO GARCIA,
attached the letter signed by defendant, JOHN D. MARTINEZ, defendant, FRANK D.
MARTINEZ, and Mitch E. Presley, Jr. (unindicted herein) described in paragraph 68 above.

70.     On or about February 26, 2002, defendant, JOHN D. MARTINEZ, orally advised
the Texas Board of Orthotics and Prosthetics that he was the new licensed orthotist in charge at
Orthopedic Specialists D.M.E., Inc.

71.     On or about March 4, 2002, an unsigned letter from defendant, JOHN D.
MARTINEZ, was sent, via facsimile, to the Texas Board of Orthotics and Prosthetics.  That letter
provided additional information in support of Orthopedic Specialists D.M.E., Inc's application
for facilities accreditation, and requested a response from the board to said application.

72.     On or about March 4, 2002, because of the representations that defendant, JOHN
D. MARTINEZ, and defendant, FRANK D. MARTINEZ, would be the on-site orthotists in

19

charge, the Texas Board of Orthotics and Prosthetics was induced to, and did, accredit
Orthopedic Specialists D.M.E., Inc. in Corpus Christi, Texas as an Orthotics Facility until
December 13, 2003. The request of Orthopedic Specialists D.M.E., Inc to be accredited as a
Prosthetics Facility was not granted.

73.     On or about March 12, 2002, as part of the attempt to obtain reinstatement of the
Medicare supplier number of Orthopedic Specialists D.M.E., Inc., defendant, MARGUERITE
JEANETTE GARCIA , sent copies of the professional licenses of defendant, JOHN D.
MARTINEZ, defendant, FRANK D. MARTINEZ, and Mitch E. Presley, Jr. (unindicted herein)
to Medicare and represented that they were the practitioners on staff at Orthopedic Specialists
D.M.E., Inc.

74.     Because of the representations that defendant, JOHN D. MARTINEZ, and
defendant, FRANK D. MARTINEZ, would be the on-site orthotists in charge of Orthopedic
Specialists D.M.E., Inc., and because the Texas Board of Orthotics and Prosthetics reinstated the
facility accreditation of Orthopedic Specialists D.M.E., Inc. in Corpus Christi, Texas as an
Orthotics Facility, Medicare was induced to, and did, reinstate the Medicare supplier number of
Orthopedic Specialists D.M.E., Inc. effective as of March 4, 2002.

75.     In a letter dated March 21, 2002, the Texas Board of Orthotics and Prosthetics
told defendant, JOHN D. MARTINEZ, that Orthopedic Specialists D.M.E., Inc's request for
accreditation as a prosthetics facility had been denied in part because the application represented
that Mitch E. Presley, Jr. (unindicted herein) would be the licensed prosthetist in charge at
Orthopedic Specialists D.M.E., Inc.  The Texas Board of Orthotics and Prosthetics expressed its
concern that Mitch E. Presley, Jr. (unindicted herein) could be on-site at Orthopedic Specialists

D.M.E., Inc. in Corpus Christi, Texas because he was already listed with the Board as the licensed prosthetist in charge of facilities in Burleson, Texas and also in Rhome, Texas. The Texas Board of Orthotics and Prosthetics advised defendant JOHN D. MARTINEZ that "Prosthetics could only be provided when Mr. Presley is on site at the Corpus facility."

76.    On or about June 17, 2003 defendant, MARGUERITE JEANETTE GARCIA , signed another Texas Board of Orthotics and Prosthetics Facility Accreditation Application for Orthopedic Specialists D.M.E., Inc. The application sought to renew the facility accreditation of Orthopedic Specialists D.M.E., Inc. as an orthotic facility and to add accreditation as a prosthetics facility. Defendant, JOHN D. MARTINEZ, also signed the application on or about June 17, 2003 as the "Orthotist in Charge" of Orthopedic Specialists D.M.E., Inc., and acknowledged that the Orthopedic Specialists D.M.E., Inc. facility in Corpus Christi, Texas would be under his on-site clinical direction and that he would supervise the provision of orthotics at the facility and would be responsible for the facility and for all employees in the facility. Steven G. Herrera (unindicted herein), a licensed orthotist and prosthetist employed by San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs in San Antonio, Texas, also signed the application on or about June 17, 2003 as the "Prosthetist in Charge" of Orthopedic Specialists D.M.E., Inc., and acknowledged that the Orthopedic Specialists D.M.E., Inc. facility in Corpus Christi, Texas would be under his on-site clinical direction and that he would supervise the provision of prosthetics at the facility and would be responsible for the facility and for all employees in the facility. Said renewal application was sent to the Texas Board of Orthotics and Prosthetics which received it on or about June 18, 2003.

77.    On or about September 26, 2003, the Texas Board of Orthotics and Prosthetics

granted orthotic and prosthetic facility accreditation to Orthopedic Specialists D.M.E., Inc. in

Corpus Christi, Texas.

78.     On or about April 22, 2005, defendant, ELEAZAR (ELI) CASTILLO GARCIA,

failed his fourth attempt to pass the examination to become a licensed orthotist.

79.     On or about November 12, 2007, defendant, ELEAZAR (ELI) CASTILLO

GARCIA, failed his fifth attempt to pass the examination to become a licensed orthotist.  He has

not taken the licensing examination since that date.


### G.  MEDICARE AND MEDICAID BILLINGS AND PAYMENTS

80.     After the Medicare supplier number of Orthopedic Specialists D.M.E., Inc. was

reinstated as of March 4, 2002, defendant, JOHN D. MARTINEZ, and/or defendant, FRANK D.

MARTINEZ, were only on-site at Orthopedic Specialists D.M.E., Inc. facility in Corpus Christi,

Texas, together or separately, approximately one (1) day per week.

81.     Notwithstanding his five (5) failed attempts to pass the licensing examination, his

lack of a license to practice orthotics, the CEASE AND DESIST ORDER of the Texas Board of

Orthotics and Prosthetics, described above in paragraph 56, and his knowledge thereof,

defendant, ELEAZAR (ELI) CASTILLO GARCIA, continued to provide custom fabricated, and

custom fitted medical devices including but not limited to extra-depth shoes (also sometimes

know as depth shoes) with inserts and custom molded shoes with inserts to individuals with

diabetes, and other orthosis and/or prosthesis to children and/or diabetic patients, and otherwise

continued to practice, attempted to practice, and offered to practice orthotics and/or prosthetics

approximately five (5) days per week at the Orthopedic Specialists D.M.E., Inc. facility in

22

Corpus Christi, Texas and elsewhere in Corpus Christi, Texas.

82.    From on or about March 4, 2002, through on or about December 23, 2008,

Orthopedic Specialist D.M.E., Inc. billed Medicare and Medicaid for orthotic and prosthetic

goods and services illegally provided by defendant, ELEAZAR (ELI) CASTILLO GARCIA, or

not provided at all.  During said time frame the false and fraudulent billings to Medicare and

Medicaid, excluding Tuesdays when defendant JOHN D. MARTINEZ or defendant Frank D.

MARTINEZ were allegedly on site at Orthopedic Specialist D.M.E., Inc., were in the

approximate sum of $758,755.94 for which Orthopedic Specialists D.M.E., Inc. was paid the

approximate sum of $523,422.48.  From on or about March 4, 2002, through on or about October

7, 2008 Orthopedic Specialists D.M.E., Inc. paid San Antonio Orthotics Corp. dba San Antonio

Orthotics & Artificial Limb, the company owned by defendant, JOHN D. MARTINEZ, and

defendant, FRANK D. MARTINEZ, the approximate sum of $642,969.74.

83.    On or about December 23, 2008, defendant, JOHN D. MARTINEZ, notified the

Texas Board of Orthotics and Prosthetics that as of midnight on that date:  "San Antonio

Orthotics and Artificial Limbs (SAOAL) and its staff will no longer act as practitioners in charge

in any capacity with regard to Orthopedic Specialists DME, and their patients."

84.    On or about January 2, 2009 defendant, MARGUERITE JEANETTE GARCIA

signed a letter addressed to the Texas Board of Orthotics and Prosthetics.  Said letter was sent to

the Texas Board of Orthotics and Prosthetics and received by the Board on or about January 6,

2009.  Said letter, was written on the letterhead of  Orthopedic Specialists D.M.E., Inc. which

listed an address of 2222 Morgan Ave, Suite 106, in Corpus Christi Texas.  The purpose of said

letter was to notify the Texas Board of Orthotics and Prosthetics that it was the intent of

23

Orthopedic Specialists D.M.E., Inc. to surrender its Orthotic and Prosthetic licenses for Suites 106 and 115 at 2222 Morgan Corpus Christi Texas.  In her letter defendant, MARGUERITE JEANETTE GARCIA, stated:

> "PLEASE LET THIS LETTER SERVE AS OUR INTENT TO SURRENDER THE ORTHOTIC AND PROSTHETIC LICENSE FOR SUITE 115 EFFECTIVE NOVEMBER 5, 2008 AS THIS IS WHEN WE MOVED OUT OF THIS OFFICE. (LICENSE #101121)"

> "ALSO, IT IS OUR INTENT TO SURRENDER (LICENSE # 000118) FOR SUITE 106 EFFECTIVE DECEMBER 28, 2008, AS WE NO LONGER HAVE A PRACTITIONER IN CHARGE."

85.     Orthopedic Specialists D.M.E., Inc. continued to submit bills to Medicare and Medicaid for orthotic goods and services after December 28, 2009.

## H.  UNITED BILLINGS

86.     During the period of time from on or about February 22, 2002 through on or about December 23, 2008, Orthopedic Specialist D.M.E., Inc. was a "preferred provider" or "network" provider for United's members pursuant to a written agreement between it and United.

87.     During the period of time from on or about February 22, 2002 through on or about December 1, 2008, San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs did not have a contract with United to be a "preferred provider" or "network" provider for United's members, and was thus considered to be out of network and an out of network provider.

24

During said time frame, claims from San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs to United for health care benefits, items or services provided to United members by San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs would have been denied and/or paid at the lower rates, and with the restrictions, established by United's payment policies for out of network providers, including but not limited to higher member responsibility for copayments, coinsurance and/or deductibles.

88.     During the period of time from on or about February 22, 2002 through on or about December 1, 2008, Orthopedic Specialist D.M.E., Inc submitted claims in excess of $367,422.00 to United, for health care benefits, items or services Orthopedic Specialist D.M.E., Inc. claimed it had provided to persons who were participants in United's health care benefit plans. United made payments to Orthopedic Specialist D.M.E., Inc. on those claims pursuant to the payment policies and rates reserved for those providers who, by contract were considered "preferred providers" or "network" providers in United's network of providers. The United payments to Orthopedic Specialist D.M.E., Inc. on those claims was in excess of $202,773.98.

89.     The claims submitted to United by Orthopedic Specialist D.M.E., Inc. as described in paragraph 88 above were false and fraudulent because Orthopedic Specialist D.M.E., Inc. did not provide any of the health care benefits, items or services listed on any of those claims it submitted to United. The health care benefits, items or services listed on those claims were provided, by San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs to its patients in San Antonio, Texas.

90.     Orthopedic Specialist D.M.E., Inc. submitted the claims described in paragraph 88 above to United because San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial

25

Limbs knew that, because it was an out of network provider, United would have denied the claims or paid them at reduced rates if the claims had come from San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs, or truthfully revealed that the health care benefits, items or services listed on said claims had been provided by San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs. Said claims were submitted to United as if the health care benefits, items or services had been provided by Orthopedic Specialist D.M.E., Inc. pursuant to an agreement between Orthopedic Specialist D.M.E., Inc. and San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs. Pursuant to said agreement, San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs sent private health information about patients it treated in San Antonio, Texas to Orthopedic Specialist D.M.E., Inc. in Corpus Christi, Texas. Orthopedic Specialists D.M.E Inc. then used the patient's private health information to submit the claims to United described in paragraph 88 above.

91.     The agreement between Orthopedic Specialist D.M.E., Inc. and San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs described in paragraph 90 above provided that Orthopedic Specialists D.M.E Inc. would send approximately 95% of each payment from United on the claims described above in paragraphs 88, 89, and 90, to San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs. During the period of time from on or about November 4, 2003 through on or about August 10, 2008, Orthopedic Specialist D.M.E. Inc. sent checks to San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs pursuant to said agreement.

## COUNT ONE

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

92.     The Grand Jury incorporates by reference Paragraphs 1 through 91 as though fully restated and re-alleged herein.

93.     Beginning on or about February 22, 2002, and continuing until on or about December 23, 2008, the exact dates being unknown to the Grand Jury, defendants,

ELEAZAR (ELI) CASTILLO GARCIA,
MARGUERITE JEANETTE GARCIA,
AKA  JEANETTE CROUT,
AKA JEANETTE CROUT-GARCIA,
JOHN D. MARTINEZ, and,
FRANK D. MARTINEZ

in the Corpus Christi Division of the Southern District of Texas, and elsewhere within the jurisdiction of the court, did conspire and agree together, and with each other, to knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health care benefit programs known as Medicare, Medicaid, and UnitedHealth Group, and to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit programs known as Medicare, Medicaid, and UnitedHealth Group, in connection with the delivery of or payment for health care benefits, items, or services.

94.     It was part of the conspiracy, that from on or about February 22, 2002, and continuing until on or about December 23, 2008, the exact dates being unknown to the Grand Jury, defendants,

27

ELEAZAR (ELI) CASTILLO GARCIA,
MARGUERITE JEANETTE GARCIA,
AKA  JEANETTE CROUT,
AKA JEANETTE CROUT-GARCIA,
JOHN D. MARTINEZ, and,
FRANK D. MARTINEZ

in the Corpus Christi Division of the Southern District of Texas and elsewhere within the

jurisdiction of the court, did submit claims, facilitated the submission of claims, aided, abetted or

assisted in the submission of claims, or caused others to submit claims to Medicare, Medicaid,

and UnitedHealth Group for orthotic goods and services which were materially false and

fraudulent, and in violation of federal and state rules and regulations and the Medicare and

Medicaid rules and regulations because the claims were:

       a)      for orthosis or orthotic goods and services and prosthesis or prosthetic

goods and services which were not supplied and/or provided by an

individual holding a current license to practice orthotics or prosthetics in

the State of Texas but were for orthosis or orthotic goods and services and

prosthesis or prosthetic goods and services which were supplied and/or

provided by defendant, ELEAZAR (ELI) CASTILLO GARCIA, who was:

       1)      not licensed to practice, to attempt to practice, to offer to practice

prosthetics, to act as an assistant to a person who practices

prosthetics, or in any way hold himself out as being able to practice

prosthetics;

       2)      not licensed to practice, to attempt to practice, to offer to practice

orthotics, to act as an assistant to a person who practices orthotics,

28

or in any way hold himself out as being able to practice orthotics;

3)      unable to pass the examination to be licensed as an orthotist; and,

4)      under an order from the Texas Board of Orthotics and Prosthetics
to CEASE AND DESIST practicing orthotics;

b)      for orthosis or orthotic goods and services and prosthesis or prosthetic
goods and services which were supplied and/or provided at, and billed by
and through, Orthopedics Specialists D.M.E., Inc. whose business was
operated in violation of federal and state licensure and regulatory
requirements;

c)      for orthosis or orthotic goods and services and prosthesis or prosthetic
goods and services which were supplied and/or provided at, and billed by
and through Orthopedic Specialists D.M.E., Inc. whose facility
accreditation from the Texas Board of Orthotics and Prosthetics was
reinstated in March 2002, and renewed thereafter, by false and fraudulent
representations;

d)      for orthosis or orthotic goods and services and prosthesis or prosthetic
goods and services which were supplied and/or provided at, and billed by
and through Orthopedic Specialist D.M.E., Inc. whose Medicare supplier
number was reinstated in March 2002, and thereafter maintained through
false and fraudulent representations;

e)      for orthosis or orthotic goods and services and prosthesis or prosthetic
goods and services which were supplied and/or provided at, and billed by

29

and through Orthopedic Specialists D.M.E., Inc. whose facility

accreditation from the Texas Board of Orthotics and Prosthetics was

voluntarily surrendered effective December 28, 2008;

f)      falsified to reflect that the goods and services were supplied and/or

provided after the Medicare supplier number of Orthopedic Specialist

D.M.E., Inc. was reinstated in March 2002;

g)      for orthosis or orthotic goods and services and prosthesis or prosthetic

goods and services which were not supplied or provided; and,

h)      for medical benefits, items, and services which were not supplied or

provided by Orthopedic Specialist D.M.E., Inc.


## OVERT ACTS

95.     In furtherance of the conspiracy and scheme and artifice to defraud, and to

accomplish their purposes and objectives, one or more co-conspirators committed, in the Corpus

Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the

court the following overt acts, among others:

a)      Each of the allegations set forth in paragraphs 66, 68 through 76, 80

through 83, 86, 88 through 94, and in Counts 2 through 20 which are

incorporated and re-alleged, as though restated herein, as individual overt

acts done in furtherance of the conspiracy.

b)      On or about February 22, 2002, defendant, JEANETTE MARGUERITE

GARCIA, signed a check from Orthopedic Specialists D.M.E., Inc. made

payable to the Texas Board of Orthotics and Prosthetics in the sum of $750.00, in payment of the Board's fee for the facility accreditation renewal of Orthopedic Specialists D.M.E., Inc.

c)      On or about February 26, 2002, defendant, JOHN D. MARTINEZ, called agents of the Texas Board of Orthotics and Prosthetics regarding the status of the renewal of the facility accreditation of Orthopedic Specialists D.M.E., Inc.  Defendant, JOHN D. MARTINEZ, represented that the facility accreditation renewal form of Orthopedic Specialists D.M.E., Inc. had been mailed to the Texas Board of Orthotics and Prosthetics.

d)      On or about March 1, 2002 the defendants delivered, or caused to be delivered, the "Facility Renewal Form" described in paragraph 67 above to the Texas Board of Orthotics and Prosthetics.

e)      On or about March 1, 2002, defendant, JOHN D. MARTINEZ, called representatives of the Texas Board of Orthotics and Prosthetics to inquire about the status of the "Facility Renewal Form" from Orthopedic Specialists D.M.E., Inc.

f)      On or about March 4, 2002, an un-signed letter from John D. Martinez L.O. was sent via facsimile from San Antonio Orthotics & Artificial Limbs to the Texas Board of Orthotics and Prosthetics.  Said letter was on Orthopedic Specialists D.M.E. Inc. letterhead dated March 2, 2002, and inquired about the status of the facility accreditation of Orthopedic Specialists D.M.E., Inc.

g)      On or about March 5, 2002, defendant, JOHN D. MARTINEZ, spoke to
        representatives of the Texas Board of Orthotics and Prosthetics about the
        facility accreditation of Orthopedic Specialists D.M.E., Inc., and about the
        possible revocation of that accreditation because of Orthopedic Specialists
        D.M.E., Inc's prior violations of the Texas Orthotics and Prosthetics Act.

h)      From on or about March 4, 2002, through on or about December 23, 2008,
        defendant, ELEAZAR (ELI) CASTILLO GARCIA, provided custom
        fabricated orthosis and/or prosthesis to children and/or diabetic patients at
        Orthopedic Specialists D.M.E., Inc., and otherwise continued to practice,
        attempted to practice, and offered to practice orthotics and/or prosthetics
        approximately five (5) days per week at the Orthopedic Specialists
        D.M.E., Inc. facility in Corpus Christi, Texas and elsewhere in Corpus
        Christi, Texas.

i)      From on or about March 4, 2002 to on or about December 23, 2008,
        Orthopedic Specialist D.M.E., Inc. submitted over 3,000 individual claims
        to Medicare and/or Medicaid for orthosis, prosthesis, and/or orthotic and
        prosthetic goods which were illegally provided or not provided at all.

j)      From on or after March 4, 2002, to a date unknown to the Grand Jury,
        Orthopedic Specialist D.M.E., Inc. falsified patient records to reflect that
        goods and services supplied and/or provided during the time that
        Orthopedic Specialist D.M.E., Inc.'s Medicare provider number was
        revoked in 2002 were supplied and/or provided on or after Orthopedic

32

Specialist D.M.E., Inc.'s Medicare provider number was reinstated on or about March 4, 2002. Orthopedic Specialist D.M.E., Inc. then submitted claims to Medicare and Medicaid for goods and services to said patients which falsely and fraudulently claimed that the goods and services had been supplied and/or provided at a time, or times, when Orthopedic Specialist D.M.E., Inc. had a valid, and current Medicaid provider number.

k)     From on or about May 7, 2002 to on or about January 22, 2009, the exact dates being unknown to the Grand Jury, Orthopedic Specialist D.M.E., Inc. submitted false and fraudulent claims for health care benefits, items or services to one, or more insurance companies, including but not limited to United for persons who were not patients of Orthopedic Specialist D.M.E., Inc., and for health care benefits, items, or services which had not been provided by Orthopedic Specialist D.M.E., Inc. or its employees, but which were provided, if at all, by one or more owners, or employees, of San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs (unindicted herein). Orthopedic Specialist D.M.E., Inc. had contractual agreements with one or more of the insurance companies to which said claims were submitted; San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs (unindicted herein), did not. After Orthopedic Specialist D.M.E., Inc. received payment from said claims it paid part or all of the insurance payments to San Antonio Orthotics Corp. dba San Antonio Orthotics & Artificial Limbs (unindicted herein).

In violation of Title 18, United States Code, Sections 1347 and 1349.

## COUNTS TWO THROUGH THIRTEEN

## HEALTH CARE FRAUD

96.      The Grand Jury incorporates by reference Paragraphs 1 through 91, and 93

through 95, as though fully restated and re-alleged herein.

97.      Beginning on or about February 22, 2002, and on or about the dates listed

below, and continuing until on or about December 23, 2008, the exact dates being unknown to

the Grand Jury, in the Corpus Christi Division of the Southern District of Texas, and elsewhere

within the jurisdiction of the court, defendants,

ELEAZAR (ELI) CASTILLO GARCIA,
MARGUERITE JEANETTE GARCIA ,
AKA  JEANETTE CROUT,
AKA JEANETTE CROUT-GARCIA,
JOHN D. MARTINEZ, and,
FRANK D. MARTINEZ,

each aiding, abetting, and assisting one another, did knowingly and willfully execute or attempt

to execute a scheme or artifice to defraud the health care benefit programs known as Medicare

and Medicaid, and to obtain by false or fraudulent pretenses, representations, or promises, any

ofthe money or property owned by, or under the custody or control of the health care benefit

programs known as Medicare and Medicaid, in connection with the delivery of, or payment for,

health care benefits, items, or services, by submitting, facilitating the submission, or causing

others to submit claims, including the following, to Medicare and Medicaid for custom

fabricated, and custom fitted medical devices including but not limited to extra-depth shoes (also

sometimes know as depth shoes) with inserts and custom molded shoes with inserts to

individuals with diabetes, and other orthosis and/or prosthesis, and/or orthotic and/or prosthetic

34

goods and services in the amounts indicated below, which were false and fraudulent for the reasons that the goods and services were supplied and/or provided, by ELEAZAR (ELI) CASTILLO GARCIA, an unlicensed person at Orthopedic Specialist D.M.E., Inc. which was operated in violation of state and/or federal licensure and regulatory requirements; the goods and services were supplied and/or provided at a facility whose state accreditation and Medicare supplier number were obtained and maintained through false and fraudulent representations and means; the goods and services were not supplied and/or provided by a podiatrist, pedorthist, orthotist, or prosthetist as required by Medicare and Medicaid and as specified by the Healthcare Common Procedure Coding System; or custom goods and services were not provided at all.  In addition, the dates of service shown on some of the claims were false and fraudulent because the goods and services were supplied and/or provided during the time that the Medicare supplier number of Orthopedic Specialist D.M.E., Inc. was revoked but the patient records were falsified to show that the goods and services were provided after the Medicare supplier number of Orthopedic Specialist D.M.E., Inc. was reinstated on or about March 4, 2002.  Said actions thereby caused Medicare and Medicaid to make payments described in paragraph 82 above and in the amounts indicated below.

| Count | Patients (all unindicted herein) | Last 5 Digits of Patient Medicare Medicaid Number | Last 5 Digits of Medicare Medicaid Claim Number | Date of Service (On or about) | Date Billed (On or about) | Amount Billed | Amount Paid |
|-------|-------|-------|-------|-------|-------|-------|-------|
| 2 | CIERAH LACKEY | Medicare NONE Medicaid 32142 | Medicare NONE Medicaid 08198 | 08-06-04 | 08-18-04 | $1,473.83 | $1,443.52 |

| Count | Patients (all unindicted herein) | Last 5 Digits of Patient Medicare Medicaid Number | Last 5 Digits of Medicare Medicaid Claim Number | Date of Service (On or about) | Date Billed (On or about) | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|---|
| 3 | CIPRIANO DeLEON | Medicare 94365A Medicaid 38717 | Medicare 77000 Medicaid 72481 | 08-30-04 | 10-28-04 | $1,229.22 | $1,206.59 |
| 4 | ENEDELIA REQUENEZ | Medicare 25995A Medicaid 00760 | Medicare 58010 and 03000 Medicaid 22807 | 10-04-04 | 10-22-04 and 01-31-05 | $878.96 | $878.96 |
| 5 | ELMA VALADEZ | Medicare 29526A Medicaid 08942 | Medicare 09000 Medicaid 33138 | 02-24-05 | 03-09-05 | $324.00 | $264.04 |
| 6 | CIPRIANO DeLEON | Medicare 94365A Medicaid 38717 | Medicare 38000 Medicaid 88509 | 07-18-05 | 07-26-05 | $1,199.26 | $1,199.26 |
| 7 | ELMA VALADEZ | Medicare 29526A Medicaid 08942 | Medicare 71000 Medicaid 15169 | 03-02-06 | 03-03-06 | $264.04 | $264.04 |
| 8 | ROSALIE PORTER | Medicare 43478C1 Medicaid 46701 | Medicare 01000 Medicaid 60434 | 04-18-06 | 4-20-06 | $264.00 | $264.04 |
| 9 | SANTIAGO GUZMAN | Medicare 46298A Medicaid 58639 | Medicare 34001 Medicaid 08722 | 09-12-06 | 09-18-06 | $968.63 | $968.63 |
| 10 | ROSA BALBOA | Medicare 29507A Medicaid 00502 | Medicare 09000 Medicaid 26056 | 01-25-07 | 03-08-07 | $275.38 | $275.38 |

| Count | Patients (all unindicted herein) | Last 5 Digits of Patient Medicare Medicaid Number | Last 5 Digits of Medicare Medicaid Claim Number | Date of Service (On or about) | Date Billed (On or about) | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|---|
| 11 | SISTER JO ANN SAENZ | Medicare 67280A Medicaid 25626 | Medicare 63000 Medicaid 00220 | 03-19-07 | 04-24-07 | $275.38 | $275.38 |
| 12 | ELMA VALADEZ | Medicare 29526A Medicaid 08942 | Medicare 13000 Medicaid 61766 | 02-05-08 | 03-13-08 | $282.80 | $282.80 |
| 13 | SISTER JO ANN SAENZ | Medicare 67280A Medicaid 25626 | Medicare 07000 Medicaid 23608 | 06-23-08 | 08-14-08 | $282.80 | $282.80 |

In violation of Title 18, United States Code, Sections 2, 1347, and 1349.

## COUNTS FOURTEEN THROUGH TWENTY

## HEALTH CARE FRAUD

98.     The Grand Jury incorporates by reference Paragraphs 1 through 91, and 93 through 95, as though fully restated and re-alleged herein.

99.     Beginning on or about February 22, 2002, and on or about the dates listed below, and continuing until on or about December 23, 2008, the exact dates being unknown to the Grand Jury, in the Corpus Christi Division of the Southern District of Texas, and elsewhere within the jurisdiction of the court,

ELEAZAR (ELI) CASTILLO GARCIA,
MARGUERITE JEANETTE GARCIA ,
AKA  JEANETTE CROUT,
AKA JEANETTE CROUT-GARCIA,
JOHN D. MARTINEZ, and,
FRANK D. MARTINEZ,

each aiding, abetting, and assisting one another, did knowingly and willfully execute or attempt

to execute a scheme or artifice to defraud the health care benefit programs of UnitedHealth

Group and to obtain by false or fraudulent pretenses, representations, or promises, any of the

money or property owned by, or under the custody or control of the health care benefit programs

of UnitedHealth Group, in connection with the delivery of, or payment for, health care benefits,

items, or services, by submitting, facilitating the submission, or causing others to submit claims

to UnitedHealth Group for health care benefits, items, or services, which were false and

fraudulent because the defendants' bills claimed that the health care benefits, items, or services

had been supplied and/or provided, by Orthopedic Specialist D.M.E., Inc. when in fact, the health

care benefits, items, or services had not been provided and/or supplied by  Orthopedic Specialist

D.M.E., Inc.  Defendants' actions caused United to make the  payments described in paragraph

88 above and in the amounts indicated below.

| Count | Patients (all unindicted herein) | Last 4 Digits of Patient United Member Number | Last 4 Digits of United Control Number | Date of Service (On or about) | Date Billed (On or about) | Amount Billed | Amount Paid |
|-------|----------------------------------|-----------------------------------------------|----------------------------------------|-------------------------------|---------------------------|---------------|-------------|
| 14 | JAY PASTWA | 7338 | 0601 | 10-21-03 | 10-30-03 | $1,845.00 | $1,291.50 |
| 15 | CALVIN DRUMMOND | 2518 | 2501 | 01-16-04 | 2-09-04 | $676.30 | $676.30 |
| 16 | CAROLYN TATULINSKI | 6628 | 2101 | 02-17-04 | 02-27-04 | $40.12 | $40.12 |

| Count | Patients (all unindicted herein) | Last 4 Digits of Patient United Member Number | Last 4 Digits of United Control Number | Date of Service (On or about) | Date Billed (On or about) | Amount Billed | Amount Paid |
|-------|----------|-------|-------|----------|----------|-----------|----------|
| 17 | JUSTIN WILLIS | 8980 | 33-01 | 11-02-07 | 01-02-08 | $814.45 | $814.45 |
| 18 | LINDA SALAS | 9688 | 32-01 | 02-05-08 | 03-05-08 | $999.00 | $599.40 |
| 19 | MARY RIVAS | 3594 | 5501 | 03-19-08 | 04-28-08 | $1,500.00 | $900.00 |
| 20 | JUTTA GARZA | 0571 | 05-01 | 11-02-08 | 12-04-08 | $69.75 | $69.75 |

In violation of Title 18, United States Code, Sections 2, 1347, and 1349.

## NOTICE OF CRIMINAL FORFEITURE

### (18 U.S.C., Section 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the commission

of a violation of Title 18, United States Code, Sections 2, 1347, and 1349, notice is given to the

defendants,

ELEAZAR (ELI) CASTILLO GARCIA,
MARGUERITE JEANETTE GARCIA ,
AKA  JEANETTE CROUT,
AKA JEANETTE CROUT-GARCIA,
JOHN D. MARTINEZ, and,
FRANK D. MARTINEZ

that in the event of conviction the following property shall be forfeited to the United States:

39

all property, real or personal, that constitutes or is derived, directly or indirectly, from

gross proceeds traceable to the commission of the offenses charged in the indictment.

The property subject to forfeiture includes, but is not limited to, the following property:

At least $726,196.46. which the defendants may be jointly and severally liable to the

United States.

<u>SUBSTITUTE ASSETS</u>

In the event that the property which is subject to forfeiture to the United States, as a result

of any act or omission of a defendant:

(1)     cannot be located upon exercise of due diligence;

(2)     has been placed beyond the jurisdiction of the Court;

(3)     has been transferred or sold to, or deposited with  a third party;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without
         difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to

the value of such property, pursuant to Title 21 United States Code, Section 853(p), made

applicable to these offenses by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:
<u>ORIGINAL SIGNATURE ON FILE</u>
FOREPERSON OF THE GRAND JURY

TIM JOHNSON
UNITED STATES ATTORNEY

By: 

REX G. BEASLEY
Special Assistant United States Attorney